UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORNE DEJONG, an individual,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>PRODUCTION ASSOCIATES, INC., a Nevada corporation doing business as PA EVENTS; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | ) CASE NO. CV 14-02357 MMM (DTBx)<br>)<br>)<br>)<br>) ORDER GRANTING PLAINTIFF'S<br>) MOTION TO REMAND<br>)<br>)<br>)<br>)<br>)<br>) |

　　On October 15, 2014, Lorne Dejong filed this action against Production Associates, Inc. ("PA") and various fictitious defendants in San Bernardino Superior Court.[1] On November 17, 2014, PA timely removed the action, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[2] Dejong's complaint pleads claims for violation of California's Unfair Competition Law

---

[1] Notice of Removal from Superior Court of California, County of San Bernardino ("Removal"), Docket No. 1 (Nov. 17, 2014), Exh. A ("Complaint") at 1.

[2] Removal at 1.

("UCL"), California Business and Professions Code § 17200,[3] and violation of various sections of the California Labor Code.[4] PA answered the complaint on December 8, 2014.[5]

On December 15, 2014, Dejong filed a motion to remand the action to San Bernardino Superior Court, asserting that the citizenship of the parties was not completely diverse.[6] PA opposed Dejong's motion on March 2, 2015.[7] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds this matter appropriate for decision without oral argument. The hearing calendared for March 23, 2015, is therefore vacated, and the matter is taken off calendar.

## I.   FACTUAL BACKGROUND

On November 4, 2013, PA hired Dejong as an executive accountant at an annual salary of $150,000.[8] Dejong alleges that executive accountants normally have responsibility, *inter alia*, for overseeing accounts receivables, such as project budgets and customer billing; financial reporting; payroll and accounts payable payment processing; and bank functions, including wire transfers, deposits, and bank reconciliations.[9] She asserts that she was never given authority to perform such tasks, however, because those functions were handled by Michael Thuney, PA's technical

---

[3]Complaint, ¶¶ 14-22.

[4]*Id.*, ¶¶ 23-28, ¶¶ 29-32, ¶¶ 33-36, ¶¶ 37-39, ¶¶ 40-42.

[5]Answer to Complaint, Docket No. 9 (Dec. 8, 2014).

[6]Notice of Motion and Motion to Remand Case to San Bernardino County Superior Court ("Motion"), Docket No. 11 (Dec. 12, 2014). See also Reply in Support of Motion to Remand Case to San Bernardino County Superior Court ("Reply"), Docket No. 17 (Mar. 9, 2015).

[7]Memorandum in Opposition to Motion to Remand Case to San Bernardino County Superior Court ("Opposition"), Docket No. 15 (Mar. 2, 2015).

[8]Complaint, ¶ 10.

[9]*Id.*

director, and Christopher Cheek, PA's Chief Financial Officer ("CFO").[10] Dejong was instead required to handle PA's accounts payable, which is not a task ordinarily performed by executive accountants.[11] She asserts that approximately ninety-five percent of her time was spent processing accounts payable, a task that purportedly did not involve any analytic work or the exercise of discretion and/or independent judgment.[12] As a result, Dejong alleges, she was misclassified as an exempt employee during her tenure at PA.[13]

Dejong contends that from November 2013 until several weeks prior to her June 5, 2014, termination, she worked six to seven days a week, including major holidays.[14] She also purportedly worked sixteen hour days – from 6:30 a.m. to 12:00 a.m. – on a regular basis and did not take lunch or dinner breaks.[15] Given her purported misclassification as an exempt employee, Dejong alleges that she was not compensated for the overtime work that she performed and that she is owed more than $167,000 in overtime compensation.[16]

Based on these allegations, Dejong pleads six claims against PA: (1) violation of California's UCL, California Business and Professions Code § 17200;[17] (2) failure to pay overtime wages in violation of California Labor Code §§ 510 and 1194;[18] (3) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 512;[19] (4) failure to provide rest breaks in

---

[10]*Id.*

[11]*Id.*, ¶ 11.

[12]*Id.*, ¶ 12.

[13]*Id.*, ¶ 13.

[14]*Id.*, ¶ 11.

[15]*Id.*

[16]*Id.*, ¶ 13.

[17]*Id.*, ¶¶ 14-22.

[18]*Id.*, ¶¶ 23-28.

[19]*Id.*, ¶¶ 29-32.

violation of California Labor Code § 226.7;[20] (5) waiting time penalties under California Labor Code §§ 201-203;[21] and (6) failure to provide accurate itemized wage statements in violation of California Labor Code §§ 221 and 223.[22]

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment[, however,] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815,

---

[20]*Id.*, ¶¶ 33-36.

[21]*Id.*, ¶¶ 37-39.

[22]*Id.*, ¶¶ 40-42.

4

818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)). Doubts as to removability must be resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

### B. Legal Standard Governing Diversity Jurisdiction[23]

Under 28 U.S.C. § 1332(a), "[t]he district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a); see also *Matheson*, 319 F.3d at 1090 ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996).

### C. Whether the Court Should Remand the Action to San Bernardino Superior Court

Dejong argues that the court lacks subject matter jurisdiction under § 1332(a).[24] Specifically, she contends that PA has not met shown that the citizenship of the parties is completely diverse.[25]

---

[23]Based on Dejong's complaint, it is clear the court lacks federal question jurisdiction under 28 U.S.C. § 1331. See 28 U.S.C. § 1331 )vesting federal courts with original jurisdiction to hear "all civil actions arising under the Constitution, laws, or treaties of the United States"). Dejong's complaint alleges only violations of state law. (See Complaint, ¶¶ 14-42.)

[24]Motion at 1.

[25]*Id.* at 6-10.

5

### 1. Whether the Court Should Remand Because Defendant Did Not Proffer Evidence With its Notice of Removal

As an initial matter, Dejong contends that the action should be remanded to San Bernardino Superior Court because PA's notice of removal was procedurally defective.[26] Specifically, Dejong argues that because PA did not proffer evidence supporting its allegations regarding the parties' citizenship, remand is required.[27] The court cannot agree.

As support for the argument, Dejong relies on *Gaus*, in which the Ninth Circuit stated that non-specific allegations in a notice of removal did not "satisf[y] [defendant's] burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion" that the court had diversity jurisdiction to hear the action. See *Gaus*, 980 F.2d at 567. Since deciding *Gaus*, the Ninth Circuit has expressly distinguished this portion of the opinion, noting that the court may consider "later-provided evidence" not included in the notice of removal in assessing whether jurisdiction exists. See *General Dentistry For Kids, LLC v. Kool Smiles, P.C.*, 379 Fed. Appx. 634, 635-36 (9th Cir. May 18, 2010) (Unpub. Disp.) ("General Dentistry contends the district court erred in denying the motion to remand and relies on *Gaus v. Miles*, 980 F.2d 564 (9th Cir. 1992). In *Gaus*, the defendant provided no evidence that the amount in controversy exceeded the jurisdictional amount. There, we stated that a defendant must set forth 'in the removal petition itself, underlying facts supporting its assertion that the amount in controversy exceeds' the jurisdictional amount. *Gaus* has been distinguished by our subsequent precedent, which holds that a district court may consider later-provided evidence as amending a defendant's notice of

---

[26]*Id.* at 1, 6; Reply at 1.

[27]Motion at 1, 6; Reply at 1 ("The defendant has the burden of showing that it has complied with the procedural requirements for removal. In its Notice of Removal, Defendant made only conclusory allegations regarding the parties' citizenship without setting forth underlying facts to support its assertions and without providing any evidentiary support. . . . A bald allegation without citation to supporting facts 'neither overcomes the strong presumption against removal jurisdiction nor satisfies [the defendant's] burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy [is satisfied].' The defective Notice requires that Plaintiff's Motion be granted" (citation omitted)).

removal," citing *Cohn*, 281 F.3d at 839-40 & n. 1; *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997)).

      Contrary to Dejong's contention, therefore, the fact that PA proffers evidence regarding the parties' citizenship for the first time in its opposition to the remand motion does not compel the court to return the action to state court. Indeed, courts in the Ninth Circuit regularly find this practice – i.e., supplementing allegations in the notice of removal with evidence demonstrating the parties' citizenship – permissible. See, e.g., *Geerlof v. C & S Wholesale Grocers, Inc.*, No. 2:13-cv-02175-MCE-KJN, 2014 WL 1415974, *5 (E.D. Cal. Apr. 14, 2014) (considering evidence proffered by defendants for the first time in opposition to plaintiff's motion to remand, and reasoning: "In *Cohn v. Petsmart*, the Ninth Circuit noted that 'Petsmart's notice of removal was deficient because it only summarily alleged that the amount in controversy exceeded $75,000, without alleging any underlying facts to support this assertion.' However, Petsmart's opposition to the plaintiff's motion to remand provided further factual basis for the amount in controversy alleged in the notice of removal, explaining that the $75,000 amount was based on the plaintiff's settlement demand. The Ninth Circuit found that 'the district court did not err in construing Petsmart's opposition as an amendment to its notice of removal.' . . . Here, Defendants have not changed their grounds for removal from that they originally asserted in the notice of removal – Defendants originally asserted diversity jurisdiction and still assert [ ] removal on [only] that basis. Defendants merely seek to supplement their original Notice of Removal with facts that support this basis for jurisdiction," citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002)); *Morella v. Safeco Ins. Co. of Illinois*, No. 2:12-cv-00672 RSL, 2012 WL 2903084, *1 (W.D. Wash. July 16, 2012) ("Although defendant chose not to include summary judgment type evidence regarding the amount in controversy in its notice of removal, it responded to the Court's order of April 24, 2012, by submitting: 1) the plaintiff's Insurance Fair Conduct Act (IFCA) complaint and settlement demand, 2) the letter from defendant requesting that plaintiff advise if he will stipulate that the amount in controversy is $75,000 or less, and 3) plaintiff's response that he is unwilling to stipulate that his damages are $75,000 or less. Plaintiff relies on *Gaus v. Miles, Inc.*, and argues that the Court should remand because defendant failed to meet its burden in its notice of

removal. However, *Gaus* has been distinguished by subsequent Ninth Circuit case law, which holds that the post-removal submission of supporting evidence can be treated as amending the notice of removal. Although the Court would have preferred if defendant had submitted its supporting evidence with its notice of removal, the Court would not have issued its order of April 24, 2012, if it did not consider the submissions relevant to a determination regarding jurisdiction," citing *Cohn*, 281 F.3d at 837; *Gaus*, 980 F.2d at 564); *Piazza v. EMPI, Inc.*, No. 1:07-cv-00954-OWW-GSA, 2008 WL 590494, *10 (E.D. Cal. Feb. 29, 2008) (considering declarations submitted in support of opposition to a motion for remand in assessing whether the defendant had adequately demonstrated complete diversity of citizenship).

The court thus treats the evidence proffered in support of PA's opposition to Dejong's motion as an amendment to the notice of removal, and denies Dejong's motion to the extent it seeks remand based on purported defects in PA's notice of removal.

### 2. Whether the Amount in Controversy Requirement is Satisfied

Although neither party disputes that the amount in controversy requirement is satisfied, the court nonetheless evaluates that allegations in the complaint and the notice of removal to determine whether more than $75,000 is at issue in this case.

"[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, [the amount in controversy] requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). See also *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"). Dejong alleges that, over the course of her employment at PA, she was required to work daily overtime and miss meal periods and rest breaks, yet was not compensated for the overtime or missed meal periods and rest breaks as required under California law.[28] She

---

[28]Complaint, ¶¶ 10-13.

8

alleges that, as a result, she is owed more than $167,000 in overtime compensation.[29] Given these allegations, the face of the state court complaint places the requisite jurisdictional amount at stake. Thus, the court concludes that the amount in controversy requirement is satisfied.

### 3. Whether the Complete Diversity Requirement is Satisfied

As noted, in any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge*, 7 U.S. (3 Cranch) 267; see also *Caterpillar, Inc.*, 519 U.S. at 68 n. 3. Dejong argues that PA has not carried its burden of showing either party's citizenship, and thus has not satisfied § 1332's complete diversity requirement.[30]

#### a. Dejong's Citizenship

In its notice of removal, PA asserts, "[u]pon information and belief and judicial admission, [that Dejong] is a citizen of the State of California."[31] As support for this allegation, it cites Dejong's complaint, which alleges that she "is an individual residing in the State of California, County of Orange."[32] As Dejong notes in her motion to remand, however, an individual's citizenship is not determined solely be her residence.[33]

A person is a citizen of a state in which he or she is domiciled. See *Gilbert v. David*, 235 U.S. 561, 569 (1915) (holding that a person is a citizen of the state in which she has her domicile, i.e., a permanent home where she intends to remain or to which she intends to return); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). A party's residence does not determine his or her citizenship for purposes of diversity jurisdiction.

---

[29]*Id.*, ¶ 13.

[30]Motion at 6-10.

[31]Removal at 3.

[32]*Id.*; see Complaint, ¶ 1.

[33]Motion at 7-9.

9

*Kanter*, 265 F.3d at 857 ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. . . . A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state"); see also *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile"). Thus, PA's allegation in the notice of removal that Dejong is a citizen of California because she is a California resident is insufficient to establish Dejong's citizenship.

PA has, however, adduced additional evidence in opposition to the remand motion that bolsters the allegations in the notice of removal. It proffers the declaration of its attorney, Ian Corzine, who states that he performed a public records background check on Dejong.[34] He attaches copies of the public records he searched, which reveal that (1) Dejong filed a petition for a name change in Orange Superior Court on April 11, 1997;[35] (2) that she has resided in California since at least October 31, 2003 – first in Huntington Beach and most recently in Irvine;[36] (3) that she filed a civil action against the County of Orange in state court on April 29, 2008;[37] and (4) that she has publicly posted information regarding her tax accounting practice, listing her place of business as Huntington Beach, California.[38]

---

[34] See Declaration of Ian Corzine, Esq., in Opposition to Motion for Remand ("Corzine Decl."), Docket No. 15-1 (Mar. 2, 2015), ¶ 2.

[35] *Id.*, ¶ 2(a), Exh. A.

[36] *Id.*, ¶¶ 2(b), (d), Exhs. B, D.

[37] *Id.*, ¶ 2(c), Exh. C.

[38] *Id.*, ¶ 2(e), Exh. E.

1        Based on the evidence proffered by PA in its opposition, it appears that Dejong has resided
2   in California for twelve to eighteen years, and has worked in the state during that period – first
3   in Huntington Beach and later for PA. Such an extensive and continuous period of residence and
4   employment in the state is sufficient to establish that Dejong is a California citizen. See *Lew v.*
5   *Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("[D]etermination of an individual's domicile involves
6   a number of factors (no single factor controlling), including: current residence, voting registration
7   and voting practices, location of brokerage and bank accounts, location of spouse and family,
8   membership in unions and other organizations, place of employment or business, driver's license
9   and automobile registration, and payment of taxes").

### b.    PA's Citizenship

11       PA is a corporation. A corporation is "deemed to be a citizen of every State and foreign
12  state by which it has been incorporated and of the State or foreign state where it has its principal
13  place of business." 28 U.S.C. § 1332(c)(1). The term "principal place of business" means "the
14  place where a corporation's officers direct, control, and coordinate the corporation's activities.
15  It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice
16  it should normally be the place where the corporation maintains its headquarters – provided that
17  the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v.*
18  *Friend*, 559 U.S. 77, 92-93 (2010).

19       In the notice of removal, PA states that it is a "citizen of Nevada," citing Dejong's
20  allegation that PA "is a Nevada corporation, which does business in California as PA Events."[39]
21  Dejong argues that PA has failed to carry its burden of establishing its citizenship because it does
22  not proffer evidence of its principal place of business.[40] She further asserts that, even had PA
23  alleged its principal place of business as required by *Hertz*, remand would be appropriate because
24  PA's principal place of business is in Redlands, California, making it, like Dejong, a California

---

[39] Removal at 3; see also Complaint, ¶ 2.

[40] Motion at 9-11.

citizen.[41] In support of this assertion, she proffers her declaration as well as the declaration of Geniene Stillwell, her attorney.[42]

Dejong states that, while she was employed by PA, she reported to work each day at PA's headquarters located at 1461 Ford Street, Redlands, California.[43] She reports that PA's officers, Technical Director Thuney and CFO Cheek, both live in California and regularly worked at PA's Redlands office.[44] Dejong asserts that Thuney and Cheek regularly met in a conference room at the Redlands office and contends that all business decisions related to the company were made during those meetings.[45] Finally, she states that she is unaware that there are any PA offices in Nevada and that she does not believe any business meetings take place in the state.[46]

Stillwell states that she performed a business entity search on the California Secretary of State's website the day the complaint was filed and a second search the day PA's notice of removal was filed; she attaches screenshots of the webpage she viewed on both days.[47] The Secretary of State's website reflects that PA is a Nevada corporation with a business address of 1461 Ford Street, Redlands, California 92373.[48] Stillwell also performed a public records search on the Nevada Secretary of State's website.[49] The Nevada Secretary of State reported that PA's officers,

---

[41]*Id.*

[42]See Declaration of Geniene B. Stillwell in Support of Plaintiff Lorne Dejong's Motion to Remand ("Stillwell Decl."), Docket No. 11-2 (Dec. 15, 2014); Declaration of Lorne Dejong in Support of Her Motion to Remand ("Dejong Decl."), Docket No. 11-3 (Dec. 15, 2014).

[43]Dejong Decl., ¶ 2.

[44]*Id.*, ¶ 3.

[45]*Id.*, ¶¶ 3, 4.

[46]*Id.*, ¶ 4.

[47]Stillwell Decl., ¶ 7.

[48]*Id.*, Exh. 5.

[49]*Id.*, ¶ 8.

12

i.e., Thuney and Cheek, each resided in Redlands, California.[50] Finally, Stillwell states that she visited PA's LinkedIn® profile on November 21, 2014.[51] She attaches a screenshot of the profile to her declaration, which shows that PA's headquarters is 1461 Ford Street, Redlands, California 92373.[52]

In its opposition, PA asserts that its principal place of business, i.e., is "nerve center," is Las Vegas, Nevada; as a result, it contends, it is a Nevada citizen whose citizenship is diverse from Dejong's.[53] It proffers the declaration of its CFO, Christopher Cheek.[54] Cheek states that PA maintains an office in Las Vegas, Nevada, and that its "directors and officers," i.e., Cheek and Thuney, meet at the Las Vegas office once a month.[55] He also states that the company's "day-to-day operations . . . are carried out in Las Vegas" – specifically: (1) 60-65% of PA's business; (2) designing sets for clients who desire to present at company trade shows; (3) producing shows for clients who desire to present at company trade shows; (4) lighting design for clients who desire to present at company trade shows; (5) audio design for clients who desire to present at company trade shows; and (6) set construction for clients who desire to present at company trade shows.[56] Cheek also states that he and Thuney have made significant business decisions while in Las Vegas, including a decision to acquire another video production company, planning for a large trade

---

[50] *Id.*, Exh. 6.

[51] *Id.*, ¶ 9.

[52] *Id.*, Exh. 7.

[53] Opposition at 2-3.

[54] See Declaration of Christopher Cheek in Opposition to Motion for Remand ("Cheek Decl."), Docket No. 15-2 (Mar. 2, 2015).

[55] *Id.*, ¶¶ 3(a), (b).

[56] *Id.*, ¶ 3(c).

1  show, determining systems upgrades to be utilized by the company, making various staffing
2  determinations, and setting director, officer, and employee salaries and bonuses.[57]

3  Dejong argues that the evidence PA has adduced is not sufficient to show that its principal
4  place of business is in Las Vegas, Nevada.[58] The court agrees that the showing is inadequate to
5  prove its citizenship and to overcome the "strong presumption against removal." See *Gaus*, 980
6  F2d at 566. Although PA asserts that it "maintains its corporate office in Las Vegas, Nevada,"[59]
7  a review of the evidence it proffered reveals how liberally PA defines the term "corporate office."
8  PA maintains that its corporate offices are located at 500 North Rainbow Boulevard, Suite 300,
9  Las Vegas, Nevada, 89107 ("Rainbow location").[60] As evidenced by the "lease" attached to
10 Cheek's declaration, however, the physical office located at that address is owned by another
11 company, Regus Management Group, LLC ("Regus"); PA's "office" is a virtual office, for which
12 PA pays Regus $89.00 a month.[61] Under the terms of the "lease," Regus purportedly provides
13 telephone answering services and accepts mail for PA, and gives with a discount on use of Regus's
14 "private offices" at the Rainbow location.[62] As one other district court has observed, Regus
15 "provides [ ] mailing addresses and phone numbers for numerous out of state businesses that wish
16 to appear as if they have a place of business in [the state]." *Nedgam Productions, LLC v.*
17 *Bizparentz Foundation*, No. 3:09-CV-500 (CFD), 2010 WL 3257909, *6 (D. Conn. Apr. 29,
18 2010) ("Defendants argue that THE does not actually conduct business out of its purported

---

[57]*Id.*, ¶ 3(d).

[58]Reply at 1-4.

[59]Opposition at 3.

[60]Cheek Decl., Exh. 2.

[61]*Id.*; see also Nevada, Las Vegas - Rainbow Virtual Office, REGUS, http://www.regus.com/locations/virtual-office/nevada-las-vegas-rainbow (last visited Mar. 10, 2015).

[62]Nevada, Las Vegas - Rainbow Virtual Office, REGUS, http://www.regus.com/virtual-office/configure/nevada-las-vegas-rainbow (last visited Mar. 10, 2015).

14

Stamford office. Defendants claim that the Stamford address is actually occupied by Regus Virtual Offices, Inc. – an entity that apparently provides Connecticut mailing addresses and phone numbers for numerous out of state businesses that wish to appear as if they have a place of business in Connecticut"); *id.* at *6 n. 13 ("According to its website, Regus provides telephone answering services and accepts mail, and allows its customers to access their 'private office' between two and five days per month, depending on which 'virtual office' package the customer chooses").

Given the fact that PA does not maintain an actual office in Nevada, it is unclear how the "day-to-day operations of PA [could be] carried out in Las Vegas," as Cheek asserts.[63] With only a "virtual office" in Las Vegas, it is not plausible that PA directs "day-to-day operations," including show production, audio and lighting design and set construction for clients, from the "corporate offices" at the Rainbow location. It appears, instead, that Cheek asserts that 60-65% of PA's business revenue comes from services provided to clients in connection with Las Vegas trade shows, i.e., that PA employees "design[ ] [ ] sets," "produc[e] [ ] shows," and engage in lighting and audio design for Las Vegas trade shows. While this may mean that the majority of PA's "business activities visible to the public take place" in Las Vegas, the Supreme Court in *Hertz* cautioned that a corporation's "nerve center" is where its business activities are controlled and directed, not necessarily where they are performed. See *Hertz*, 559 U.S. at 96 ("We recognize that the use of a 'nerve center' test may in some cases produce results that seem to cut against the basic rationale for 28 U.S.C. § 1332. For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York. One could argue that members of the public in New Jersey would be less likely to be prejudiced against the corporation that persons in New York – yet the corporation will still be entitled to remove a New Jersey state case to federal court. And note too that the same corporation would be unable to remove a New York state case to federal court, despite the New York public's presumed

---

[63]Cheek Decl., ¶ 3(c).

prejudice against the corporation").[64] The fact, therefore, that 60-65% of PA's business activities visible to the public occur in Las Vegas, Nevada, is not determinative under the "nerve center" test. Additionally, while PA asserts that its "directors and officers," i.e., Cheek and Thuney, meet in Las Vegas once a month and have made several significant business decisions "while

---

[64]See also *Cail v. Joe Ryan Enterprises, Inc.*, __ F.Supp.3d __, 2014 WL 5685575, *3-5 (M.D. Ala. Nov. 4, 2014) ("The nerve center does not necessarily lie where 'the bulk of a company's business activities visible to the public take place,' that is, if the direction and control of those business activities occur from a location in another state. . . . Defendants point out correctly that, under the nerve center test, a 'corporation's day-to-day operations are not relevant to the nerve center test under *Hertz*.' The court has focused not on the day-to-day operations, but rather on who is directing, controlling, and coordinating those operations"); *Balachander v. AET Inc. Ltd.*, No. H-10-4805, 2011 WL 4500048, *6-8 (S.D. Tex. Sept. 27, 2011) ("The *Hertz* Court recognized that 'hard cases' would remain. It highlighted the challenges posed by 'this era of telecommunicating, [in which] some corporations may divide their command and coordination functions among officers who work at several different locations, perhaps communicating over the Internet.' The Court emphasized that the nerve-center test 'points courts in a single direction, towards the center of overall direction, control, and coordination. Courts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other.' . . . The plaintiffs rely heavily on various AET documents. The plaintiffs point to AET Group's 2007 corporate report, which states that 'AET Inc. Limited operates mainly from Houston and is responsible for our U.S. Gulf, Mexican, and Caribbean operations.' The report also identifies the corporate office's location in Houston and states that the company 'employs our Houston-based personnel.' The report's statements are consistent with finding that AET's principal place of business is in Malaysia. Whether AET 'operates primarily from Houston' is not relevant to the question at issue: where do the company's high-ranking decisionmakers work, set corporate policy, and direct the corporation's business activities," citing *Hertz*, 559 U.S. at 96); *L'Garde, Inc. v. Raytheon Space and Airborne Systems*, 805 F.Supp.2d 932, 940-41 (C.D. Cal. 2011) ("The Court also notes that this Action is analogous to the Southern District Court of California's recent decision, *In re Hydroxycut Marketing and Sales Practices Litigation*. There, plaintiffs alleged that defendant was a non-diverse New York based company because it had a large facility in New York. The Court disagreed, nothing that the high level executive decisions were made in Ontario, Canada, despite the presence of the large New York facility. Similarly, in the present Case, Plaintiff assumes Defendant Raytheon SAS is a California company because of its highly visible business activities within the state; however, Defendant has pled facts indicating its executive-level decisions are made from Raytheon Company's Waltham, Massachusetts headquarters and, under the 'nerve center' test, the Court finds that to be determinative," citing *In re Hydroxycut Marketing and Sales Practices Litigation*, No. 09MD2087-BTM (AJB), 2010 WL 2998855, *2-4 (S.D. Cal. July 29, 2010)).

1  present in Las Vegas,"[65] the "nerve center" is "not simply an office where the corporation holds
2  its board meetings (for example, attended by directors and officers *who have traveled there for*
3  *the occasion*)." *Hertz*, 559 U.S. at 93.  Instead, as noted, it is the location where the
4  "corporation's officers direct, control, and coordinate the corporation's activities."

5  PA argues that its "virtual office" in Las Vegas, to which its two officers purportedly travel
6  on a monthly basis for meetings, is its "nerve center."  Given undisputed evidence that PA does
7  not have an actual office in Las Vegas, this argument cannot succeed.  The Supreme Court has
8  warned against attempts to circumvent the "nerve center" test and have directed courts to conclude
9  that the corporation's "nerve center" is the "place of *actual direction, control, and coordination,*
10 *in the absence of such manipulation*."  *Hertz*, 559 U.S. at 97 ("[I]f the record reveals attempts at
11 manipulation – for example, that the alleged 'nerve center' is nothing more than a mail drop box,
12 a bare office with a computer, or the location of an annual executive retreat – the courts should
13 instead take as the 'nerve center' the place of actual direction, control, and coordination, in the
14 absence of such manipulation").

15 PA does not dispute the evidence Dejong proffers that its high level officers and directors
16 work at the Redlands office on a daily basis and make significant business decisions regarding
17 PA's business activities there.[66]  This evidence, which indicates that Cheek and Thuney "direct[ ],
18 control, and coordinat[e]" PA's business activities from its self-identified "headquarters" in
19 Redlands suffices to establish that PA's "nerve center" is in Redlands, California.  This is
20 particularly true given that a corporation's "nerve center" is "usually its main headquarters."
21 *Hertz*, 559 U.S. at 93 ("[The 'never center] in practice [ ] should normally be the place where the
22 corporation maintains its headquarters – provided that the headquarters is the actual center of
23 direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the
24 corporation holds its board meetings (for example, attended by directors and officers who have
25 traveled there for the occasion)").  As a result, PA is a California citizen.  Because Dejong and

---

[65]Opposition at 3; Cheek Decl., ¶¶ 3(b), (d).

[66]See Dejong Decl., ¶¶ 3-4.

17

1  PA are both citizens of the state, complete diversity is lacking and the court must remand the
2  action for lack of subject matter jurisdiction.

### D.     Plaintiff's Request for Attorneys' Fees

In the event the court remands the action, Dejong seeks attorneys' fees under 28 U.S.C. § 1447(c). "Under 28 U.S.C. § 1447(c), '[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" *Federal Home Loan Mortg. Corp. v. Lettenmaier*, No. CV 11-165-HZ, 2011 WL 1297960, *1 (D. Or. Apr. 5, 2011) (quoting 28 U.S.C. § 1447(c)). "'Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.'" *Id.* (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

"Removal is not objectively unreasonable because the removing party's arguments lack merit and the removal is not ultimately unsuccessful." *Id.* (citing *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)). "Rather, the court should assess 'whether the relevant case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity of the law at the time of removal.'" *Id.* (quoting *Lussier*, 518 F.3d at 1066); see also *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999-1000 (9th Cir. 2006) ("Del Taco's state court petition to confirm the arbitration award contained only one state law cause of action; it did not contain any federal claim that could provide the basis for a § 1441(c) removal. Joinder of a federal claim and a claim for removal of a state court action in a federal complaint cannot effect a § 1441(c) removal. There being no objectively reasonable basis for removal, the district court did not abuse its discretion in awarding attorney's fees under § 1447(c) to Del Taco").

Dejong argues that the court should grant her request for attorneys' fees because PA's "Notice of Removal was shockingly deficient"; once again, she relies on the fact that the original notice of removal "contained merely conclusory allegations, without setting forth any underlying

facts or citing to any evidence or supporting documents whatsoever."[67] While the court appreciates that PA's notice of removal could have contained more factual allegations respecting the parties' citizenship, PA was not, for reasons already noted, required to make detailed factual allegations or proffer evidence supporting its notice of removal, as Dejong contends. Under Ninth Circuit law, it is permissible for a party to supplement the allegations in a notice of removal by submitting evidence in opposition to a motion to remand. See *Kool Smiles, P.C.*, 379 Fed. Appx. at 635-36; *Cohn*, 281 F.3d at 839-40 & n. 1; *Singer*, 116 F.3d at 376.

Dejong makes no other argument as to why PA lacked an objectively reasonable basis to remove. Nor does she assert that the action was removed in bad faith or for an improper motive. Courts have declined to award fees under § 1447(c) in similar circumstances. See, e.g., *Yazzie v. Celadon Trucking Services, Inc.*, No. CV-09-8198-PHX-GMS, 2010 WL 749639, *2 (D. Ariz. Mar. 3, 2010) (denying fees despite defendant's failure to adduce any evidence of the amount in controversy because "there is no evidence of improper motive, unreasonable bases for removal, or other 'unusual circumstances'"); *Hauer v. Priceline.com, Inc.*, No. C 08-02608 JSW, 2008 WL 3286980, *2 (N.D. Cal. Aug. 6, 2008) ("Although it was not ultimately persuaded by Priceline's arguments, the Court does not find that Priceline's removal was frivolous or motivated by bad faith. The Court therefore declines to exercise its discretion to award Plaintiff's fees and costs under Section 1447(c)"). Because there is no evidence that PA acted for an improper motive or in bad faith, the court denies Dejong's request for attorneys' fees.

---

[67]Motion at 11-12 ("Defendant did not provide any declaration from any of its agents or officers or even from its attorneys. Defendant did not even state where it is incorporated or where its principal place of business is located. In contrast, Plaintiff was able to cite to and provide a plethora of evidentiary and factual support as well as easily accessible public documents which show overwhelmingly that Defendant's principal place of business is, and was at the time of the commencement of this action in state court and at the time of removal, in Redlands, California. Defendant's unsupported Notice of Removal has created unnecessary distraction and delay for Plaintiff; and has forced her to file this Motion to Remand, in response to Defendant's defective and objectively unreasonable removal petition. Plaintiff submits that attorneys' fees are appropriate in these circumstances and requests an award of $6,500.00").

### III.  CONCLUSION

For the reasons stated, the court grants Dejong's motion to remand, and directs the clerk to remand the action forthwith to San Bernardino Superior Court.  The court denies Dejong's request for attorneys' fees.

DATED: March 19, 2015

                                         MARGARET M. MORROW
                                         UNITED STATES DISTRICT JUDGE